# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re: | Bky. No.: 19-40365 |
| Michael M. Paczkowski, | Chapter 7 |
| Debtor. |  |

|  |  |
|---|---|
| Casey Garven, Gina Garven, and DRMP Concrete, LLC, | Adversary Proceeding No.: _____ |
| Plaintiffs, |  |
|  | **COMPLAINT** |
| v. |  |
| Michael M. Paczkowski, |  |
| Defendant. |  |

Plaintiffs Casey Garven and Gina Garven ("Garvens") and DRMP Concrete, LLC ("DRMP"), for their Adversary Complaint against Michael M. Paczkowski ("Paczkowski" or the "Debtor"), state and allege as follows:

## PARTIES

1.     Garvens are individuals and citizens of Minnesota.

2.     DRMP is a Minnesota limited liability company.

3.     Defendant Paczkowski is an individual and, upon information and belief, a citizen of Minnesota, whose principal address is 1426 Fox Meadow Drive in Delano, Minnesota.

## JURISDICTION AND VENUE

4.     This adversary proceeding is brought pursuant to Bankruptcy Rule 7001 and arises under 11 U.S.C. §§ 523 and 727.

5.     This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rule 7001(6).

6.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

7.     Venue is appropriate pursuant to 28 U.S.C. §1409.

8.     The petition commencing this bankruptcy case was filed by the Debtor under chapter 7 of title 11 of the U.S. Code (the "Bankruptcy Code") on February 12, 2019 (the "Petition Date").

9.     The Garvens and DRMP consent to an entry of a final judgment by the bankruptcy court in this matter

## FACTUAL ALLEGATIONS

10.     On February 20, 2017, the Garvens entered into a written agreement with Paczkowski and his alter ego company, DRMP. The agreement called for Paczkowski to furnish Garvens with various goods and services in and around their home, including: a stamped concrete patio and a fire pit, fireplace construction, deck repairs and improvements, landscaping and exterior drain-tiling, and garage-floor repairs ("the Project").

11.     Paczkowski represented that the entire Project would be completed by mid-April 2017. Paczkowski also warranted that all products and services would be provided with commensurate workmanship and acted as the general contractor for the Project. In exchange for these services and promises, the Garvens agreed to pay Paczkowski approximately $31,000 for the Project.

12.     The work of Paczkowski and DRMP was constantly plagued by defects and delays. Indeed, nearly every facet of the work performed on Garvens' property was defective in some way. These failures have occurred despite the fact that Garvens paid Paczkowski nearly

the entirety of the agreed-upon price for the goods and services that he warranted. The defects included the following:

a. The fireplace was not structurally sound and the support structure is dangerously inadequate;

b. The fireplace was improperly vented, creating a fire hazard;

c. The porch floor needed to be replaced due to the various chips, scratches, and dents sustained during the fireplace work;

d. The deck railing system needed to be fixed and screw holes on the deck needed to be patched;

e. The deck stairs were not rebuilt to code and needed to be completely reconstructed;

f. The electrical work surrounding the fireplace needed to be repaired;

g. The stamped concrete needed to be torn up and completely redone as a result of Paczkowski using a different color than was agreed to, inconsistent design patterns, and myriad holes throughout the patio;

h. An irrigation line was cut during landscaping, requiring immediate repair;

i. The garage floor was never epoxied;

j. The screens in the porch needed to be adjusted; and

k. Paczkowski failed to obtain the requisite city permits or inspections for the work he undertook.

13. The Garvens consistently requested that Paczkowski repair the defective work in May, June, July, and August 2017—to no avail. These requests were made to Paczkowski directly by phone call, text message, e-mail, and in person.

14.     On August 31, 2017, the Garvens sued Paczkowski and DRMP for breach of contract and negligence in Carver County District Court for the State of Minnesota. The Garvens sought to recoup the money paid to Paczkowski as well as the cost to completely redo his defective work.

15.     On October 26, 2017, the district court entered default judgment in favor of the Garvens in the amount of $66,553.32.

16.     On December 8, 2017, the Garvens served post-judgment discovery requests on Paczkowski, seeking disclosure of his personal interests and assets for collection purposes. Paczkowski failed to respond.

17.     While refusing to answer post-judgment discovery disclosing his personal assets, Paczkowski continued operating DRMP. On May 18, 2018, the Garvens obtained a writ of execution, delivered the writ to the Wright County Sheriff, and requested that the Wright County Sheriff levy the writ on Paczkowski's shares of DRMP.

18.     The Wright County Sheriff served Paczkowski with the writ on June 14, 2018, and scheduled an execution sale for August 1, 2018.

19.     After learning of the execution sale, Paczkowski effectively gutted DRMP of its assets. In fact, in the two weeks leading up to the execution sale, Paczkowski withdrew more than $80,000 from DRMP's bank account to pay for materials. More than $70,000 of that money was spent on concrete. More than $10,000 was spent on pool supplies and equipment. Upon information and belief, Paczkowski intended to continue his concrete operations under a different entity after the sheriff's sale, taking the concrete, supplies, and equipment purchased with DRMP's funds and transferring these materials to a different entity, without informing the Garvens.

20.    In addition, Paczkowski made massive cash transfers from DRMP's bank accounts with no legitimate basis to do so.  Paczkowski operated DRMP's bank accounts at Bremer Bank, using four different business banking accounts.  From July 31, 2018 (the day before the execution sale) to the Petition Date, Paczkowski made 71 separate wire transfers from the four accounts to an account believed to be his personal checking account.  These 71 transfers totaled $216,428.50.  In addition, Paczkowski also made $3,200 in ATM withdrawals from these various accounts, meaning he personally absconded with nearly $220,000 from DRMP's bank accounts in just over five months.

21.    During this time period, Paczkowski also regularly used DRMP funds to pay for personal items.  These expenses ranged in nature from restaurant tabs to bowling fees to tax-relief counsel.  Upon information and belief, Paczkowski treated the DRMP bank accounts as his own personal checking accounts.

22.    The Garvens purchased the membership interests of DRMP at the execution sale on August 1, 2018 and became the owners of DRMP.

23.    Upon information and belief, Paczkowski began operating through a different company, Complete Exteriors LLC ("Complete Exteriors") immediately after the execution sale, just as he planned.  Complete Exteriors had been administratively dissolved by the Secretary of State on March 18, 2018, and was a defunct organization when Paczkowski began shifting DRMP's assets to it.  Upon information and belief, Paczkowski took possession of certain DRMP assets after August 1, 2018, including concrete, pool supplies, equipment, and case, and transferred these assets to Complete Exteriors.

24.     Upon information and belief, Paczkowski began performing jobs booked by DRMP through Complete Exteriors, and then paid DRMP contractors for performing these jobs through checks issued by Complete Exteriors.

25.     Upon information and belief, Paczkowski began pouring concrete purchased with DRMP funds for projects performed by Complete Exteriors.

26.     Upon information and belief, Paczkowski continued collecting accounts receivable paid directly to DRMP and depositing those amounts in non-DRMP accounts, despite the fact that he no longer owned DRMP.

27.     Upon information and belief, he also began collecting accounts receivable belonging to DRMP, requesting that clients of DRMP instead pay the amounts owed to DRMP to Complete Exteriors.

28.     Upon information and belief, Paczkowski has continued to self-deal from the bank account of Complete Exteriors and withdrew large sums of cash without making any effort to pay his creditors, including the Garvens.

29.     Meanwhile, Paczkowski continued refusing to respond to the Garvens' post-judgment discovery requests seeking disclosure of his personal assets—such as his ownership interest in Complete Exteriors.

30.     On August 22, 2018, the Garvens moved to compel post-judgment discovery responses from Paczkowski.  On September 4, 2018, the district court granted the Garvens' motion and sanctioned Paczkowski $1,950.  The district court ordered Paczkowski to answer the Garvens' post-judgement discovery requests by September 10, 2018.  The district court also ordered Paczkowski to attend a post-judgment deposition by September 24, 2018.  Paczkowski ignored the court order in all respects, refusing to pay his sanction, disclose his assets—including

his interest in Complete Exteriors—in response to the Garvens' post-judgment discovery, and refusing to sit for a deposition to answer questions under oath about his assets and his current business operations.

31.     On September 18, 2018, the Garvens initiated contempt proceedings and arranged for a hearing on October 2, 2018.  Paczkowski obtained counsel and stipulated to the stay of the contempt proceeding.  The district court issued an order pursuant to the parties' stipulation.  Paczkowski was ordered to answer the Garvens' post-judgment discovery requests by November 5, 2018.  He was ordered to sit for a post-judgment deposition by November 16, 2018.  And he was also ordered to pay the previous $1,950 sanction.  A tracking hearing was set for December 4, 2018.

32.     Paczkowski bounced a check for the $1,950 sanction before issuing a replacement check three weeks later.  Both checks were tendered from Complete Exteriors.  Paczkowski also failed to respond to the Garvens' post-judgment discovery requests by November 5, 2018, as ordered by the Court.  Nor did he appear for the court-ordered post-judgment deposition by November 16, 2018, allowing him to continue concealing his assets from the Garvens.

33.     The parties appeared for a tracking hearing on December 4, 2018.  Paczkowski failed to demonstrate good cause for his failure to abide by the court's order compelling post-judgment discovery.  The district court found Paczkowski in contempt of court.  The district court sanctioned Paczkowski $7,312.50.  The district court sentenced Paczkowski to 30 days of incarceration in the Carver County Jail.

34.     The district court stayed Paczkowski's jail sentence pending compliance with the following three purge conditions: (a) he answer all post-judgement discovery requests by January 11, 2019; (b) he attend a post-judgment deposition before January 31, 2019; and (c) he pay the

$7,312.50 sanction by January 11, 2019. The district court arranged for a tracking hearing on February 13, 2019, with the express warning that a bench warrant would be issued at that time if Paczkowski failed to satisfy the purge conditions.

35.    Despite that express warning from the district court, Paczkowski failed to satisfy the court's purge conditions. For a third time, he refused to respond to the Garvens' post-judgment discovery requests despite being ordered to do so by the district court. For a third time, he refused to sit for a post-judgment deposition despite being ordered to do so by the district court. And he refused to pay the $7,312.50 contempt sanction issued by the district court.

36.    Counsel for the Garvens updated the district court of Paczkowski's failure on February 6, 2019, and requested that a bench warrant be issued at the February 13 tracking hearing.

37.    On February 12, 2019, Paczkowski filed his bankruptcy petition. He did so without disclosing all of the DRMP bank accounts from which he self-dealt in the year prior to filing. Upon information and belief, he did so principally to avoid being jailed for civil contempt at the tracking hearing the next day. Upon information and belief, Paczkowski made no effort to pay the Garvens' judgment from the almost $220,000 in cash that he secreted from the DRMP bank accounts before filing.

38.    On March 17, 2019, Paczkowski's son, Ryan, incorporated a new entity, RJP Construction, Inc. ("RJP Construction"). Upon information and belief, Ryan Paczkowski also has a membership interest in Complete Exteriors.

39.    Upon information and belief, Paczkowski and his son intended to shift all of the remaining assets from Complete Exteriors to RJP Construction during the pendency of this bankruptcy proceeding to further evade Paczkowski's creditors. RJP Construction maintains the

same registered address as DRMP and Complete Exteriors. And Paczkowski is currently operating RJP Construction through DRMP's email account.

<b><u>COUNT I</u></b>

<b>Fraud or Defalcation While Acting in a Fiduciary Capacity – 11 U.S.C. § 523(a)(4)</b>

40.     Plaintiff realleges the allegations in paragraphs 1-39 as if fully set forth herein.

41.     Pursuant to 11 U.S.C. § 523(a)(4), a debt incurred by a debtor who commits fraud or defalcation while acting in a fiduciary capacity is not discharged.

42.     Paczkowski, for all relevant time periods prior to the execution sale, was the sole member of DRMP, and as a result, under Minnesota law, owed DRMP certain fiduciary duties, including, but not limited to a duty of loyalty and a duty of care, which includes an express duty to hold, as trustee, any property, profit, or benefit derived from the company by the member.

43.     As alleged herein, subsequent to the entry of judgment against him and DRMP in favor of the Garvens, but prior to the execution sale pursuant to which the Garvens became the owners of DRMP, Paczkowski diverted funds or materials from DRMP to himself or to successor entities in which he had an ownership interest (like Complete Exteriors), without providing any consideration to DRMP, rendering DRMP unable to pay its legitimate creditors, including the Garvens.

44.     Paczkowski engaged in this conduct for his own personal benefit, and in a manner adverse to the interest of the company.

45.     Further, Paczkowski competed with DRMP in the conduct of DRMP's activities by using or transferring DRMP's funds or materials to himself or otherwise for the benefit of a competing entity in which he owned an interest.

46.     Paczkowski also failed to account to DRMP regarding such misappropriation of funds and property.

47.     By engaging in this conduct, Paczkowski breached his fiduciary duties to DRMP, and committed defalcation while acting in a fiduciary capacity.

48.     As a proximate result of Paczkowski's breaches of his fiduciary duty to DRMP, DRMP has suffered an injury in excess of $300,000.00, which amount should be determined nondischargeable under 11 U.S.C. § 523(a)(4).

## COUNT II
### Embezzlement – 11 U.S.C. § 523(a)(4)

49.     Plaintiff realleges the allegations in paragraphs 1-48 as if fully set forth herein.

50.     Pursuant to 11 U.S.C. § 523(a)(4), a debt incurred by a debtor who commits embezzlement is not discharged.

51.     Paczkowski, for all relevant time periods prior to the execution sale, was the sole member of DRMP.

52.     In his capacity as an officer or sole member of DRMP, Paczkowski was entrusted by DRMP with its property and funds, and such property and funds would often be lawfully under his control.

53.     As alleged herein, subsequent to the entry of judgment against him and DRMP in favor of the Garvens, but prior to the execution sale pursuant to which the Garvens became the owners of DRMP, Paczkowski, on numerous occasions, intentionally diverted and appropriated such funds or materials from DRMP to himself, without providing any consideration to DRMP, rendering DRMP unable to pay its legitimate creditors, including the Garvens, constituting embezzlement.

54.     Paczkowski was not entitled to use such funds or property for the purposes for which they were, in fact, used.

55.     As a proximate result of Paczkowski's embezzlement, DRMP has suffered an injury in excess of $300,000.00, which amount should be determined nondischargeable under 11 U.S.C. § 523(a)(4).

**COUNT III**
**Larceny – 11 U.S.C. § 523(a)(4)**

56.     Plaintiff realleges the allegations in paragraphs 1-55 as if fully set forth herein.

57.     Pursuant to 11 U.S.C. § 523(a)(4), a debt incurred by a debtor who commits larceny is not discharged.

58.     Paczkowski, for all relevant time periods prior to the execution sale, was the sole member of DRMP.

59.     As alleged herein, subsequent to the entry of judgment against him and DRMP in favor of the Garvens, but prior to the execution sale pursuant to which the Garvens became the owners of DRMP, Paczkowski, on numerous occasions, intentionally diverted funds or materials from DRMP to himself or to successor entities in which he had an ownership interest (like Complete Exteriors), without any legal authority to do so.

60.     Paczkowski engaged in this conduct for his own personal benefit, though he was not entitled to use such funds or property for such purposes.

61.     Paczkowski appropriated certain property and funds from DRMP to himself with intent to deprive DRMP of the same, constituting larceny.

62.     As a proximate result of Paczkowski's larceny, DRMP has suffered an injury in excess of $300,000.00, which amount should be determined nondischargeable under 11 U.S.C. § 523(a)(4).

**COUNT IV**
**Willful and Malicious Injury to an Entity (DRMP) - 11 U.S.C. § 523(a)(6)**

63.     Plaintiff realleges the allegations in paragraphs 1-62 as if fully set forth herein.

64.     DRMP is a limited liability company, and thus, an "entity", as defined by 11 U.S.C. § 101(15).

65.     Pursuant to 11 U.S.C. § 523(a)(6), a debt incurred by a debtor who engages in willful and malicious conduct which results in harm, is nondischargeable.

66.     Paczkowski engaged in willful and malicious conduct by converting property of DRMP, namely materials and funds, to himself or other entities for use by competing entities in which he held an ownership interest.

67.     Paczkowski intentionally deprived DRMP of those certain funds and property, and caused DRMP harm.

68.     Paczkowski intended for this harm to result from his conduct in converting the funds and property, or otherwise knew that this harm was substantially or nearly certain to occur as a result.

69.     Paczkowski willfully and maliciously caused this harm to DRMP.

70.     As a result of this willful deprivation of its property, DRMP has suffered an injury in the amount of the funds and value of the property converted, to be determined at trial, which amount should be determined nondischargeable under 11 U.S.C. § 523(a)(6).

**COUNT V**
**Denial of Discharge – Transfer, Removal, Destruction, or Concealment of Property of the Debtor within One Year of the Petition Date with Intent to Hinder or Delay Creditors – 11 U.S.C. § 727(a)(2)(A)**

71.     Plaintiffs reallege the allegations in paragraphs 1-70 as if fully set forth herein.

72.     Within one year prior to the Petition Date, Debtor engaged in an scheme to transfer assets between his various entities in order to continue to conduct business through business entities as to which various judgments had not attached.

73.     During all relevant times prior to execution on said judgments, Debtor owned all membership interests in DRMP and accordingly, the value of any assets of DRMP necessarily constitute value with respect to such membership interests, and such value was property of the Debtor.

74.     Further, as set forth above, subsequent to having a judgment entered against DRMP and himself in favor of the Garvens, and within a year prior to the Petition Date, the Debtor transferred funds and equipment from DRMP, either to himself or to various other entities in which he held an ownership interest, or both, for the sole purpose of avoiding his legitimate creditors.

75.     The debtor did not receive any value in exchange for such transfers of property from himself to his various entities.

76.     Such transfers occurred within one year of the Petition Date.

77.     The transfer of such funds and equipment constitutes a transfer of property of the debtor.

78.     Further, nowhere in his schedules or in his testimony at the 341 hearing has the Debtor indicated that such asset transfers occurred, thereby concealing information regarding such transfers from his legitimate creditors and the chapter 7 trustee.

79.     Further, as set forth above, with respect to the post-judgment discovery engaged in by the Garvens, the Debtor took substantial and intentional steps to avoid disclosing document records pertaining to his assets and these transfers of assets between himself and certain entities in which he had an interest – to the extent that the Carver County Sherriff was forced to issue multiple orders for contempt to inspire the Debtor to disclose his financial condition.

80.     The Debtor's actions with respect to the Carver County litigation constitute concealment of property of the Debtor with the intent to hinder or delay his legitimate creditors taking place within a year of the Petition Date.

81.     As a result of this conduct, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

## COUNT VI
### Denial of Discharge – Concealment or Failure to Preserve Documents, Records, Papers, and other Information Demonstrating the Debtor's Financial Condition or Business Transactions – 11 U.S.C. § 727(a)(3)

82.     Plaintiffs reallege the allegations in paragraphs 1-81 as if fully set forth herein.

83.     As set forth above, in the time period within one year prior to the Petition Date, the Debtor engaged in a scheme to avoid his legitimate creditors by transferring assets between himself and other entities in which he had an ownership or other interest.

84.     Nowhere in the Debtor's schedules are such transfers identified.

85.     Such transfers were not set forth in his testimony before the chapter 7 trustee at the meeting of creditors.

86.     Such conduct constitutes concealment of information relevant to Debtor's financial condition and business transactions.

87.     As a result of this conduct, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

## COUNT VII
### Denial of Discharge – Knowingly and Fraudulently Making a False Oath – 11 U.S.C. § 727(a)(4)

88.     Plaintiffs reallege the allegations in paragraphs 1-87 as if fully set forth herein.

89.     In his Statement of Financial Affairs, the Debtor knowingly and fraudulently failed to disclose all the transfers of funds or equipment, from DRMP, to himself or directly to entities in which he held an ownership interest for his own personal benefit.

90.     As set forth herein, on numerous occasions during the year prior to the Petition Date, the Debtor transferred certain funds and property from his entities, including DRMP, to himself, then to other entities in which he had an ownership interest.

91.     Such transfers were made for the Debtor's personal benefit.

92.     Nowhere in his schedules or statement of financial affairs does the debtor disclose such transfers of property.

93.     At the meeting of creditors held on March 27, 2019, the Debtor knowingly and fraudulently made the following false oath: that the information in his petition, schedules, and statement of financial affairs was true and correct.

94.     Such false oaths contain material omissions regarding property of the Debtor and/or property of the estate.

95.     As a result of such false oaths, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4).

**WHEREFORE**, Plaintiffs Casey Garven, Gina Garven, and DRMP Concrete, LLC request that this Court grant an Order as follows:

96.     Determining that the Debtor committed defalcation while acting in a fiduciary capacity as to DRMP;

97.     Determining that the damages resulting from such defalcation constitute non-dischargeable debt, in an amount to be determined at trial, pursuant to 11 U.S.C. § 523(a)(4);

98.     Determining that the Debtor committed embezzlement as to DRMP;

99. Determining that the damages resulting from such embezzlement constitute non-dischargeable debt, in an amount to be determined at trial, pursuant to 11 U.S.C. § 523(a)(4);

100. Determining that the Debtor committed larceny as to DRMP;

101. Determining that the damages resulting from such larceny constitute non-dischargeable debt, in an amount to be determined at trial, pursuant to 11 U.S.C. § 523(a)(4);

102. Determining that the Debtor converted property of DRMP constituting the infliction of a willful and malicious injury to DRMP;

103. Determining that the damages resulting from such conversion constitute non-dischargeable debt, in an amount to be determined at trial, pursuant to 11 U.S.C. § 523(a)(6);

104. Denying the Debtor a discharge as a result of his transfer, removal, destruction, or concealment of property of the Debtor within one year of the Petition Date with intent to hinder or delay creditors;

105. Denying the Debtor a discharge as a result of his concealment or failure to preserve documents, records, papers, and other information demonstrating the Debtor's financial condition or business transactions;

106. Denying the Debtor a discharge as a result of his knowingly and fraudulently making a false oath in connection with the bankruptcy case;

107. Awarding Plaintiffs their reasonable attorney fees, costs, and expenses incurred in connection with this matter; and

108. Granting such other and further relief as is just and equitable.

Respectfully submitted,

**BASSFORD REMELE, P.A.**
***A Professional Association***

Dated: May 28, 2019          By: /e/ Jeffrey D. Klobucar
                                  Jeffrey D. Klobucar (#0389368)
                                  Daniel R. Olson (#0389235)
                                  100 South Fifth Street, Suite 1500
                                  jklobucar@bassford.com
                                  dolson@bassford.com
                                  Phone: (612) 333-3000
                                  Fax:     (612) 333-8829

                                  ***Attorneys for Plaintiffs***